UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 5:08-CV-00113-TBR

JOHN G. TURNER                                                                                    PLAINTIFF

v.

LEGGETT & PLATT, INCORPORATED                                          DEFENDANT

## MEMORANDUM OPINION

This matter is before the Court upon Defendant, Leggett & Platt, Incorporated's, Motion for Summary Judgment (DN 32). The plaintiff, John G. Turner, has filed a response (DN 33). Defendant has filed a reply (DN 35). This matter is now ripe for adjudication. For the reasons that follow, Defendant's motion is GRANTED.

## BACKGROUND

Leggett & Platt, Incorporated, Defendant, is a manufacturer of bedding and furniture components, and other home, office and automotive related products. Defendant acquired several plastic component manufacturing plants beginning in 1998, with the stated intent of developing a substantial plastics division.

In May of 2006, Russ Fugate, the Leggett & Platt executive overseeing the Plastics Division, presented a strategic review of the Division to Defendant's Board of Directors. During this presentation, Fugate set out three possible actions for Defendant: divesting the Division; organic growth through existing resources, or acquisition growth. The presentation advocated growth of the Division which was endorsed by Defendant and Defendant began implementing the growth strategy outlined by Fugate.

Defendant states as part of this growth strategy Defendant hired Jeremy Bogard in November 2005, as Manager of Engineering Services. In June 2006, Murray, Kentucky, was selected as the

location for the Plastics Division's sales and engineering management offices. Fugate also authorized Jim Uknea, Plastics Division President, to being the process of hiring a sales manager by January 2007.

In November or December 2006, Plaintiff, John G. Turner, saw an ad for the Plastics Division Sales Manger on a job website. Plaintiff responded to the job posting and submitted a copy of his resume. Plaintiff resided in Columbus, Ohio, at the time and was working at DME Company.

A few weeks after Plaintiff responded to the job posting he had a telephone interview with Ukena. Plaintiff later met Ukena in Nashville, Tennessee, for an in-person interview. Ukena described the position and identified several weaknesses, or "opportunities", in the Division. Plaintiff also states that Ukena told him that Defendant wanted the person hired for the position to be a "long-term" employee and that if Plaintiff were hired he'd have a long career with Defendant. Plaintiff also alleges Ukena told him Defendant wanted a sales director to hire additional sales people and aggressively grow the Plastics Division.

In late December 2006, or early January 2007, Ukena called Plaintiff to offer him the position. Plaintiff turned down the offer and began negotiating for a higher salary.

On January 11, 2007, Plaintiff signed and submitted an application for employment. The application stated in part,

> I understand that my filling out this application does not imply any promise of my employment with Leggett & Platt. I further understand that if I am employed my employment will be at will and I may leave employment or the Company may terminate my employment at any time for any reason or for no reason.

On February 6, 2007, Ukena asked Fugate for authority to increase Defendant's offer to Plaintiff. Approval was granted and on February 7, 2007, Plaintiff was again offered the position. Plaintiff accepted the same day, relocated to Kentucky, and began work on March 5, 2007.

On his first day of work, Plaintiff signed various documents pertaining to his new employment, including tax forms, healthcare forms, and an Employee Invention and Confidentiality Agreement. Plaintiff did not, and has never, signed a formal employment contract. The Employee Invention and Confidentiality Agreement expressly stated, "I understand that this agreement is not a contract or other guarantee of employment. In the absence of a specific employment agreement in writing, Leggett may terminate my employment at any time."

Plaintiff also received a copy of Defendant's Business Policies Manual in pamphlet form. The manual states in relevant part:

> Unless there is a specific and personal written employment agreement, signed by an authorized officer, between the Company and an employee, the employee is free to leave the employment of the Company or the Company may terminate the employment of the employee at any time, for any or no reason. The company's policy is to be an employment at-will employer. Nothing contained in this booklet or in other publication of the Company is intended by the Company to be (nor should it be construed as) and employment agreement or contract, or a restriction on the Company's or employee's right to terminate the employment relationship with or without cause.

After working for a couple of weeks, Plaintiff states it became apparent that what Ukena had represented to him about the Division was not true. Plaintiff stated the conditions were far worse than he had been told. Plaintiff also learned that Fugate had been fighting Ukena about spending money on the Division. Additionally, Plaintiff noted that no acquisition had been made in the Plastics Division since 2003.

Defendant states it continued its efforts to implement the growth strategy outlined by Fugate in his May 2006 presentation after Plaintiff was hired. From February to April 2007, Fugate discussed acquiring a variety of different plastics companies. Russell Lorio, another Leggett & Platt executive, sent Fugate a list of numerous acquisition projects related to the expansion of the

Division on June 4, 2007. Plaintiff states he attended a March 2007 meeting with an acquisition target in Philadelphia.

On or about April 26, 2007, Defendant hired Boston Consulting Group ("BCG") to independently assess all 21 of Defendant's business units, including the Plastics Division. BCG reported its findings to the Board of Directors on August 29, 2007. BCG recommended that Defendant divest the Plastics Division.

In late August or early September 2007, Plaintiff was informed that the Plastics Division was being sold. Plaintiff testified that he expressed concern to his supervisor, Fugate, about his future employment, but alleges he was assured that a position would be available for him until the Plastics Division was sold. Plaintiff provides a letter, in addition to his testimony, dated November of 2007, which stated in part:

> Your continued involvement in the operation of the Plastics Division is crucial to the ongoing operation of the business and its employees as well as successfully presenting the business to potential buyers.

On November 14, 2007, Plaintiff signed an acknowledgment stating that he had received and read a copy of the Defendant's later version of the Business Policies Manual. The manual retained a provision stating that "[t]he Company's policy is to be an employment at-will employer," unless a written employment agreement signed by an authorized officer stated otherwise.

On April 28, 2008, Plaintiff had dinner with Fugate and Bogard in Murray, Kentucky. The purpose of the meeting, as stated by Fugate, was to discuss ways in which the Division's sales efforts could be improved. Fugate states at the meeting he told Plaintiff he was not encouraged by the Division's recent sales results. Fugate explains he intended the statement would prompt Plaintiff to respond with ways in which he could be more engaged in efforts to find new business

until the sale of the Division was completed; however, Plaintiff responded that he did not think it was appropriate for Bogard to be present. Fugate states Plaintiff did not offer any comments about what he could do to continue contributing, but instead complained that he was not being treated fairly and that Defendant was being unprofessional. Fugate explained that Plaintiff's comments were confrontational and made him uncomfortable moving forward with Plaintiff in the sales manager position. Fugate then decided to terminate Plaintiff's employment.

Plaintiff states that on April 29, 2008, he was under the impression Fugate had come to Murray, Kentucky, for his annual performance review. When Plaintiff arrived at the office on April 29, Fugate and Bogard were in the meeting room. Plaintiff states he questioned why Bogard was present and Fugate said he was a witness. Fugate then informed Plaintiff he was being terminated.

In his Complaint, Plaintiff contends that Defendant improperly recruited, retained, and discharged him. He alleges claims for breach of express and implied contract, outrage, fraud, disability discrimination and promissory estoppel. Defendant previously moved the Court to partially dismiss Plaintiff's breach of contract, outrage, and disability discrimination claims. Defendant also moved the Court to grant partial summary judgment in Defendant's favor regarding Plaintiff's fraud and promissory estoppel claims. The Court denied Defendant's Motion for Partial Summary Judgment and granted in part and denied in part Defendant's Motion to Dismiss. Defendant now moves again for summary judgment as to Plaintiff's claims for breach of contract, fraud, promissory estoppel and outrage.

**STANDARD**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

**DISCUSSION**

Defendant asserts that Plaintiff's remaining four claims for breach of contract, fraud,

6

promissory estoppel, and outrage should be dismissed in their entirety and judgment entered in Defendant's favor.

## I. Breach of Contract

Defendant states Plaintiff's breach of contract claim should be dismissed because Plaintiff signed an acknowledgment that his employment by Defendant would be solely at-will. Defendant goes on to state that "Plaintiff admits he had no written contract of employment with Leggett & Platt, and he has no evidence that the Company ever modified the at-will nature of his employment." DN 32-1 at 1. Defendant contends Plaintiff did not address this issue in his response. The standard for summary judgment requires the nonmoving party present more than a mere scintilla of evidence in support of his position in order to survive.

Although not particularly clear, it appears Plaintiff may have partially addressed this issue beginning on page 11 of his response. DN 34. Plaintiff argues the statements made to him by Fugate that he would maintain his position until sale of the Division demonstrated a very specific and clear alteration of Plaintiff's at-will status, i.e., Fugate's statements created an oral contract of employment until sale of the Division. DN 34 at 12-13. Plaintiff points to a letter addressed to Plaintiff, dated November of 2007, which stated in part:

> Your continued involvement in the operation of the Plastics Division is crucial to the ongoing operation of the business and its employees as well as successfully presenting the business to potential buyers.

Plaintiff also points to deposition testimony of Plaintiff where it is stated:

> Q. [Mr. Craig] The next paragraph says, "On January 28th, 2008, I called Mr. Fugate and said how long do I have before a new job is necessary? Mr. Fugate responded, quite the contrary, we need you and you have a job until the division sale is completed. We need you to stay on and keep doing what you are doing. We especially need you to meet with the potential new buyer. John, don't worry." Is that an accurate statement?

7

> A. [Mr. Turner] Yes. But that wasn't the first time I asked him that question.
>
> Q. Okay. What did he say before in response to that question?
>
> A. Almost the same thing word for word. And that's when - when I asked him that the first time was when he confirmed that the company was for sale in September [2007].
>
> Q. So Mr. Fugate asked you to stay on and said that you would have a job until the division sale was completed; is that correct?
>
> A. Correct.

Turner Dep. 245:6-246:1.

> The Court has previously stated in this case:
>
> Kentucky is an at-will employment state, meaning that an employer can discharge an
> employee for any reason, including a morally indefensible one. *Grzyb v. Evans*, 700 S.W.2d 399, 400 (Ky. 1985). "Absent a clear statement not to terminate without cause, the assumption is that the parties intended to enter into an ordinary employment relationship, terminable at the will of either party." *McNutt v. Mediplex of Kentucky, Inc.*, 836 F.Supp. 419, 421 (W.D. Ky. 1993) (citing *Shah v. Am. Synthetic Rubber Corp.*, 655 S.W.2d 489, 492 (Ky. 1983)). To establish a breach of express contract claim under Kentucky law, a plaintiff must show by clear and convincing evidence that an agreement existed between the parties. *See Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F.Supp.2d 784, 790 (W.D. Ky. 2001). "An implied contract is one neither oral nor written-but rather, implied in fact, based on the parties' actions." *Hammond v. Heritage Communications, Inc.*, 756 S.W.2d 152, 154 (Ky. Ct. App. 1988). To establish a breach of implied contract claim under Kentucky law, a plaintiff must show a violation of a constitutionally protected right or a right implicit in a statute. *Id.* (citing *Firestone Textile Co. Div. v. Meadows, Ky.*, 666 S.W.2d 730 (Ky. 1984)).

Mem. Op., Oct. 7, 2008, at 3-4. Additionally, "[a]lthough Kentucky has recognized that employment-at-will relations may be modified by an oral contract, statements about 'great futures' do not meet the criteria to form an oral contract." *Hines v. Elf Atochem North America, Inc.*, 813 F. Supp. 550, 552-3 (W.D. Ky. 1993) (internal citations omitted).

8

The Court finds, even taking the facts in a light most favorable to Plaintiff, Plaintiff has not established a claim for breach of an express or implied contract. The statements alleged by Plaintiff do not reflect "a clear statement not to terminate without cause." While the oral statements by Fugate may imply Plaintiff would not lose his job because of the sale, there was no assurance Plaintiff would not be fired before the sale was completed for any other reason or that cause was required in order to terminate. Therefore, Plaintiff has not shown any agreement existed between the parties; nor has Plaintiff shown a violation of a constitutionally protected right or a right implicit in a statute. The Court finds Defendant's motion for summary judgment as to Plaintiff's claim for breach of contract must be granted and the claim against Defendant dismissed.

**II. Fraud**

Defendant asserts that Plaintiff is unable to establish a *prima facie* case for fraud and therefore summary judgment should be granted for the Defendant. The Court first addressed this argument in its October 7, 2008, Memorandum Opinion when deciding Defendant's motions to partially dismiss and for partial summary judgment. The Court stated

> To establish a prima facie case for fraud under Kentucky law, a plaintiff must prove by clear and convincing evidence that: (1) the defendant made a material misrepresentation to the plaintiff; (2) the misrepresentation was false; (3) the defendant knew it was false or made it recklessly; (4) the defendant induced the plaintiff to act upon the misrepresentation; (5) the plaintiff relied upon the misrepresentation; and (6) the misrepresentation caused injury to the plaintiff. *Radioshack Corp. v. ComSmart, Inc.*, 222 S.W.3d 256, 262 (Ky. Ct. App. 2007) (citing *United Parcel Service Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999)). "Under Kentucky law, representations as to future conduct will not support a fraud claim. However, a statement as to future conduct may form the basis for a misrepresentation claim if made with the intent to induce the other party to enter into a contract." *Davis v. Siemens Medical Solutions USA, Inc.*, 399 F.Supp.2d 785, 800 (W.D. Ky. 2005) (internal citations omitted). Finally, "the claimant must be justified in relying upon the representations in the exercise of common prudence and diligence." *Wells v. Huish Detergents, Inc.*, 19 Fed.Appx. 168 (6th Cir. 2001) (citing *Selke v. Stewart*, 260 Ky. 442, 86 S.W.2d 83, 87 (1935)).

9

Mem. Op., Oct. 7, 2008, at 8-9. The Court denied summary judgment explaining: "at this early stage in the litigation, the Court is not convinced that the case law relied upon by Defendant is so decisive. The Court finds that this issue may be better resolved upon the completion of discovery." *Id.* at 9. Discovery has now been completed and Defendant has again moved for summary judgment. Defendant argues Plaintiff has no evidence to support either a claim for fraud by misrepresentation or fraud by omission.

### A. Fraud by Misrepresentation

The Court will address the fraud by misrepresentation first. Plaintiff alleges Ukena told him during the interviewing process that if he performed as asked he would have a "long career" with Defendant. Plaintiff also alleges Fugate promised him a job until the sale of the Division was completed. Plaintiff argues these statements were intentional, false representations of a material facts which induced Plaintiff to seek employment with and remain employed by Defendant to his detriment. Plaintiff contends Defendant was aware of its intention to sell the Division at the time it hired Plaintiff making any statements of a long career misrepresentations of material facts.

Defendant contends Plaintiff is unable to support this argument with evidence. Defendant cites the Declaration of Fugate, Fugate's May 2006 presentation, and the acquisition meetings as evidence Defendant did not intend to sell at the time it hired Plaintiff. Plaintiff points to circumstantial evidence that the Plastics Division was "under funded, in poor shape and ready for sale to an outside entity". There may be a genuine issue of material fact; however, the Court need not make this determination as it finds other elements of the claim of fraud by misrepresentation have not been met.

Defendant argues, even if Defendant misrepresented the length of employment to Plaintiff,

Plaintiff could not have reasonably relied on these oral assertions by Ukena or Fugate. It is well settled law in Kentucky that "a party may not rely on oral representations that conflict with written disclaimers to the contrary which the complaining party earlier specifically acknowledged in writing." *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 640-41 (Ky. Ct. App. 2003); *Davis v. Siemens Medical Solutions USA, Inc.*, No. 3:04-cv-195-MO, 2007 WL 710133, *3 (W.D. Ky. March 6, 2007) (finding "as a matter of law there can be no misrepresentation of any issue that is contradicted by the terms of a written contract").

Defendant asserts there is sufficient evidence that Plaintiff signed employment materials which acknowledged the at-will nature of his employment, thus the alleged oral statements contradict written statements in clear opposition to Kentucky law. Defendant points specifically to the job application which was signed by Plaintiff on January 11, 2007, before he was hired and began working on March 5, 2007.

Plaintiff's response is unclear. Plaintiff relies largely on a Colorado Court of Appeals case which holds that "[a]n employer's right to terminate an at-will employee at any time without cause is not inconsistent with an action for fraudulently inducing such employee's acceptance of employment." *Berger v. Security Pacific Information Systems, Inc.*, 795 P.2d 1380, 1384 (Colo. Ct. App. 1990). Plaintiff alleges he was induced to accept employment with Defendant by Ukena's statement that he would have a "long career" with Defendant which occurred before employment and before the job application stating at-will employment was signed. Plaintiff reasons his at-will employment status is not a defense the claim of alleged fraudulent inducement during the interviews and negotiations prior to hiring.

However, Plaintiff did not accept the job until after the job application, including the written

11

provision describing the at-will employment status, had been signed. The record reflects that, at the time Plaintiff accepted his employment, he was well aware of his at-will employment status through the written provision and therefore could not have reasonably relied on the statements by Ukena made prior to his hiring. Nor could Plaintiff have relied on the statements by Fugate, after his employment began, allegedly promising employment until the sale of the Division as these statements also contradicted the job application, the Employee Invention and Confidentiality Agreement, and Business Policies Manual. The Court finds the oral promises alleged by Plaintiff are in direct contradiction of the written records produced as evidence in this case; as a result, under Kentucky law, Plaintiff cannot prevail on a claim for fraud by misrepresentation.

### B. Fraud by Omission

Plaintiff alleges that Defendant made false and fraudulent misrepresentations to induce him to work for Defendant, including failing to disclose to Plaintiff Defendant's decision to sell the Plastics Division prior to hiring Plaintiff. Plaintiff alleges Defendant had a duty to apprise him of the actual situation at the Division and give him the full facts.

In order to establish a case of fraud by omission, a plaintiff must be able to show that the defendant "(1) had a duty to disclose a material fact; (2) failed to disclose that fact; (3) which induced the plaintiff to act; and (4) the plaintiff suffered actual damages as a result." *Associated Warehousing, Inc. v. Banterra Corp.*, Case No. 5:08-cv-00052-TBR, 2008 WL 4180260, *3 (W.D.Ky. Sept. 8, 2008) (citing *Rivermont*, 113 S.W.3d at 641). "A duty to disclose facts is created only where a confidential or fiduciary relationship between the parties exists, or when a statute imposes such a duty, or when a defendant has partially disclosed material facts to the plaintiff but created the impression of full disclosure." *Rivermont*, 113 S.W.3d at 641 (citing *Dennis v. Thomson*,

43 S.W.2d 18 (Ky.1931)). "A relationship that gives rise to a fiduciary duty is one founded on trust or confidence reposed by one person in the integrity and fidelity of another and which also necessarily involves an undertaking in which a duty is created in one person to act primarily for another's benefit in matters connected with such undertaking." *Associated Warehousing*, 2008 WL 4180260 at *4 (citing *Steelvest, Inc. v. Scansteel Services Ctr., Inc.*, 807 S.W.2d 476, 486 (Ky.1991)) (internal quotation marks omitted). "A duty to speak may arise from partial disclosure; the speaker being under the duty of saying nothing, or to tell the whole truth." *Dennis v. Thomson*, 43 S.W.2d 18,23 (Ky. Ct. App. 1931) (citations omitted).

Defendant argues that Plaintiff is unable to establish a duty to disclose on the part of Defendant. Plaintiff argues the circumstantial evidence that the Division was to be sold, i.e., that the Division was "under funded, in poor shape and ready for sale to an outside entity," "imposed a duty on [Defendant] to apprise [Plaintiff] of the actual situation of the division." DN 34 at 11. Plaintiff does not assert that there was a fiduciary or statutory duty to disclose; however, taking the facts in a light most favorable to Plaintiff, it appears Plaintiff has provided some evidence that facts were partially disclosed which created the impression of full disclosure.

The Court finds, however, even after taking the facts in a light most favorable to Plaintiff, that Plaintiff has not produced sufficient evidence to overcome the evidence produced by Defendant. The summary judgment standard requires the plaintiff present evidence on which the trier of fact cold reasonably find for the plaintiff. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). As stated previously, mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render

13

summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

Defendant presents substantial evidence that Defendant had not decided to sell the division at the time of Plaintiff's interview. Defendant first points to Fugate's May 2006 presentation during which Fugate stated there were three possible courses of action, one of which was divestment. DN 32-4. However, the conclusion of the presentation was that Defendant would pursue an acquisition growth strategy for the Plastics Division. DN 32-4. Fugate has also provided testimony that he and Ukena discussed acquiring several plastics companies from February to April 2007. Decl. Fugate ¶ 12, Jan. 13, 2010. There is also evidence that another Leggett & Platt executive, Russell Lorio, sent Fugate a list of numerous acquisition projects related to expansion of the division. Decl. Fugate ¶ 13. Fugate testified that Defendant was actively involved with the targets provided by Lorio by requesting information, participating in on-site visits and submitting non-bing indications of interest. Decl. Fugate ¶ 14. Plaintiff testified that he attended a March 2007 meeting with an acquisition target. Turner Dep. 230:1-4.

Defendant also asserts "Plaintiff's attempt to link his evaluation date and Ukena's resignation to an alleged decision by [Defendant] to sell the Plastics Division is pure speculation." DN 32-1 at 15. Defendant has provided the testimony of Ukena that his resignation was for personal reasons and not related to the stability of the Division or Defendant. Ukena Dep. 34:1-11, Dec. 17, 2009.

Plaintiff asserted in response to the motion for summary judgment that Plaintiff had circumstantial evidence that Defendant had decided to sell the Division. However, Plaintiff has testified that his only evidence was his own experience. Turner Dep. 230-31. The deposition

testimony states:

> Q. . . .Do you have any evidence to refute that this memorandum accurately reflects Leggett & Platt's strategic interest in acquiring companies for the plastics division in or around June 2007?
> A. The evidence I have looks at the facts as that they did not make an acquisition after 2003.
> . . .
> A. I do not have written evidence that there is – this is not a legitimate document. When a company hasn't purchased – an acquisition – they haven't purchased anybody in five years, four years – five years now, it tells me this is a lot of nonsense.
> Q. Let me make sure, other than your belief that what's reflected in Exhibit 18 is a lot of nonsense, do you have any evidence that the participants at this meeting were not actively considering acquisitions for the plastics division in June of 2007?
> A. No. I just have to go by my experience.
> Q. And your experience is what –
> A. 28 years in plastics.
> Q. Let me finish the question. Your experience is what cases you to believe that Leggett & Platt didn't have an interest in acquiring a company for the plastics division in June of 2007; is that correct?
> A. That's correct.
> Q. But you don't have any evidence to support that believe, other than your experience, correct?
> A. Correct.

Turner Dep. 230:6-231:12.

The Court finds Plaintiff has not presented evidence that is more than mere speculation regarding whether Defendant had decided to sell the Division prior to Plaintiff's interview. Without more, Plaintiff is unable to prevail on a claim for fraud by omission. Summary judgment is granted as to Plaintiff's claim for fraud by omission.

**III. Promissory Estoppel**

This argument was also first addressed by the Court in is October 7, 2008, Memorandum Opinion. The Court held:

> Promissory estoppel exists where "a party reasonably relies on a statement of another and materially changes his position in reliance on the statement." *Rivermont Inn, Inc.*

15

> *v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 642 (Ky. Ct. App.2003). Under Kentucky law, to state a claim for promissory estoppel requires "'(1) a promise; (2) which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee; (3) which does induce such action or forbearance; and (4) injustice can be avoided only by enforcement of the promise.'" *Abney v. Amgen, Inc.*, 443 F.3d 540, 549 (6th Cir. 2006) (citing *Bergman v. Baptist Healthcare Sys., Inc.*, 344 F.Supp.2d 998, 1003 (W.D. Ky. 2004)). The reliance must be justified and "a party may not rely on oral representations that conflict with written disclaimers to the contrary which the complaining party earlier specifically acknowledged in writing...." *Rivermont*, 113 S.W.2d at 640-41.
>
> Plaintiff alleges a claim for promissory estoppel based on two sets of promises made at two different times. The first set of promises pertain to Plaintiff's decision to come work for Defendant. Plaintiff alleges that he was promised certain responsibilities and opportunities to grow the Plastics Division and that those promises were merely a rouse to induce him to come work for Defendant. These promises were made prior to Plaintiff signing any disclaimers stating that he was an at-will employee. The second set of promises pertain to Plaintiff's decision to forgo seeking employment elsewhere after being informed that the Plastics Division was for sale. Plaintiff alleges that he was promised continuous employment by his supervisor and that he did not pursue other employment in reliance on his supervisor's assurances. These promises were made after Plaintiff had signed documents indicating his employment was at-will status.

Mem. Op., Oct. 7, 2008, at 9-10. The Court denied summary judgment as it was very early in litigation. The Court explained, "[t]he Court identifies these two sets of promises for the sake of both parties in the hope that upon the completion of discovery, these issue may be properly fleshed out." *Id.* at 10. Discovery has now been completed and Defendant has again moved for summary judgment.

Defendant argues, under Kentucky law, reliance on a promise must be reasonable. Defendant then contends that Plaintiff has no evidence that he reasonably relied on any promise made by Defendant prior to, or after, Plaintiff's being hired because Plaintiff's reliance on any statement contradicting a written document is by law unreasonable.

Plaintiff does not address Defendant's argument regarding the promises made prior to his

16

hiring, by Ukena, in his response. Plaintiff argues the statements made to him by Fugate regarding his maintaining his position until sale of the Division demonstrated a very specific and clear alteration of Plaintiff's at-will status. DN 34 at 12-13. As evidence Plaintiff cites deposition testimony and a letter dated November 2007 which is set forth in the Court's discussion of the breach of contract claim.

Defendant first asserts that Plaintiff's reliance on an alleged promise must be reasonable. It appears that Kentucky law on this issue is somewhat unsettled. As recently explained by another judge in this district, "the Kentucky Supreme Court has recently reaffirmed that promissory estoppel is 'alive and well' in this commonwealth" and has relied upon the Restatement (Second) of Contracts § 90 in defining the doctrine. *TWB Distribution, LLC v. BBL, Inc.*, Case No.: 3:08-cv-509-S, 2009 WL 5103604, *5 (W.D. Ky. Dec. 17, 2009)(internal quotations omitted) (citing *Sawyer v. Mills*, 295 S.W.3d 79, 89 n.3 (Ky. Aug. 27, 2009)). After citing the relevant Restatement section, the Court concluded "[t]he Restatement thus does not absolutely require that the promisee's reliance be reasonable, though such reasonableness is a factor in deciding whether justice requires enforcement." *Id.*

It appears there have been several cases which have faced the question of whether reasonableness is an essential element of a promissory estoppel claim and these cases hold that it is an essential element. *Rivermont*, 113 S.W.3d at 640-41; *Fletcher v. Branch Banking & Trust Corp.*, Case No. 3:04cv-573-H, 2007 WL 2792186, *5 (W.D. Ky. Sept. 21, 2007); *Butler v. Progressive Cas. Ins. Co.*, Case No. 5:04cv84R, 2005 WL 100962, *4 (W.D. Ky. April 25, 2005). The Kentucky Supreme Court in deciding *Sawyer* did not address the conflict with *Rivermont* as the issue of reasonableness was not raised. *See TWB Distribution*, 2009 WL 5103604 at *5.

17

The *TWB Distribution* Court, in looking at the cases requiring reasonableness held

> none of these cases bind this Court, and all three predate the Kentucky Supreme Court's most recent statement of the law in *Sawyer*. Furthermore, *Rivermont* cites no authority in support of the proposition that reasonable reliance is required. Because the Sixth circuit and the Kentucky Supreme Court appear to agree that the Restatement definition governs promissory estoppel claims in this state, this Court feels itself constrained to join them.

*Id.* at *6.

The Court went on to hold that "[w]hile reasonable reliance is not an essential element of the *prima facie* case, reasonableness warrants significant consideration in deciding whether enforcement of a promise is necessary to avoid injustice." *Id.* The Court determined that promissory estoppel was not available where plaintiffs had signed a contract that specifically prohibited the oral modifications there were the essence of plaintiffs' claim. *Id.* The Court agreed with the court in *Fletcher* which held that "where a party has specific knowledge of a written provision contradicting a subsequent oral representation, it is unreasonable as a matter of law for that party to rely upon the oral representation." *Id.* (internal citations and quotations omitted). The Court reasoned "it was surely unreasonable to rely on an oral modification expressly barred by the very contract that it purported modify. It was far more reasonable for defendants to rely on the terms of the written agreement. Justice simply does not require the abrogation of those terms." *Id.* The claim for promissory estoppel was therefore dismissed.

Here, the Court finds promissory estoppel is similarly unavailable to Plaintiff where he had signed several documents, e.g., the job application, the Business and Policies Manual, and the Employee Invention and Confidentiality Agreement, all acknowledging his at-will employment status. As in case of *TWB Distributors*, it was unreasonable for Plaintiff to rely on an oral modification which contradicted the written terms provided both prior to his acceptance of the

18

position and after he was hired. Defendant's motion for summary judgment as to Plaintiff's claim for promissory estoppel is granted.

**IV. Outrage**

Defendant asserts Plaintiff's claim of outrage should be dismissed as Plaintiff has no evidence Defendant engaged in intolerable conduct that offends generally accepted standards of decency and morality. Plaintiff did not respond to this issue in his response. The standard for summary judgment requires the nonmoving party present more than a mere scintilla of evidence in support of his position in order to survive. In the instant case, Plaintiff has failed to respond to this issue and has therefore failed to meet its burden. The Court grants the entry of summary judgment for Defendant as to Plaintiff's claim for outrage.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment is GRANTED. Plaintiff's claims for breach of contract, fraud by misrepresentation, fraud by omission, promissory estoppel and outrage are dismissed. All claims against Defendant are dismissed. An appropriate order shall issue.